## L. MILLAUDON *v.* BENJAMIN POYDRAS DE LALANDE et al.

The proviso to the Act of 3d March, 1811, declares that until the final decision of Congress thereon, no tract of land shall be offered for sale, the claim to which has been in due time and according to law presented to the Recorder of land titles in the District of Louisiana. A claim to the land in controversy was made in 1836, and prosecuted until 1844, when patents issued. The plaintiff's claim rested on entries made in 1839. *Held :* That under the proviso of the Act of 3d March, 1811, no entry of the land could be made, a claim for it being then pending. *And by the Court*—The entries made in 1839, in which the floating claims of the plaintiff originated were in violation of law—null and void. And as floating claims are liable to the same disabilities as the original pre-emptions from which they are derived, the nullity extends to them.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *J. & J. Henderson*, for plaintiff and appellant. *Janin & Taylor* and *Benjamin & Micou*, for defendant.

CAMPBELL, J. The plaintiff acquired from the United States lands in the rear of the defendant's plantation, and holds as his title to them, seven patent certificates given for floating claims, originating in entries made within the limits of the Houma claim at a distance of more than a league and a half from the front and bearing date 1st April, 1839.

The defendants also claim title to those lands by purchase from the United States, under various Acts of Congress, authorizing the proprietors of lands fronting on water courses to enter, in the rear, as much land as they owned in front.

With the consent of the plaintiff, the land was sold at public auction by the defendants, in whose possession it was; and in compliance with the agreement entered into between them, he claims in this suit the proceeds of the sale. There was judgment against him, and he appealed.

The agreement entered into is, that the plaintiff shall sue for the proceeds of the sale, and that if the court is of opinion that he has the better title, he shall recover, &c. He is therefore bound to show a good title.

The contradictory opinions entertained at different times by the officers of of the Land Department, in relation to the Houma claim, has occasioned much embarrassment to the courts. In the case of *Foly* v. *Harrison*, 5 A., 90, the late court recognized the weight which those opinions ought to have with the judiciary, but inasmuch as the decisions of the Department upon the Houma

grant, so far as they affected the claims under consideration in that suit, were    MILLAUDON
in direct conflict with each other, the court was compelled to elect between   LALANDE ET AL.
them, and in so doing, held that the action of Congress in 1814 was final on the
whole claim, and satisfied the proviso of the Act of March 3, 1811, which is,
that, until the final decision of Congress thereon, no tract of land shall be offered
for sale, the claim to which has been in due time, and according to law, pre-
sented to the Recorder of land titles in the District of Louisiana, etc.

The Houma claim filed for confirmation with the board of commissioners, ex-
tended from the Mississippi to the river Amite, and embraced several hundred
thousand acres of land.   It was confirmed by the board of commissioners, and
also by the Act of Congress 12th April, 1814, which limited it to the number of
acres contained in one league square.   See Story's Laws of United States, vol.
2, p. 1410, ch. 111.

In 1829, Mr. Graham, then Commissioner of the General Land Office, ordered
the claim to be surveyed, with a depth of one and a half leagues, thus giving
the claimant the quantity of land contained in a league square, and at the same
time instructed the Register and Receiver at New Orleans to treat all beyond
that depth as public land, subject to settlement and entry.   The land was ac-
cordingly surveyed, and a vast number of settlements were soon made in the
rear of the survey, without objection from the owners of the Houma claim, who
appear to have acquiesced in the decision of Mr. Graham, that those lands were
subject to sale and entry, until 1836.

As the case was presented in *Foly* v. *Harrison*, Congress had acted upon the
claim, and virtually limited it to the quantity of land contained in a league
square.   The Commissioner of the Land Office had determined that its decision
was final, and satisfied the proviso of the Act of 1811; that until the final action
of Congress thereon, no tract of land should be offered for sale, the claim for
which had been presented in due time and according to law.   He had instructed
the Register and Receiver that the unconfirmed part of the claim was no longer
protected against sale or entry by that proviso, and the holder of the Houma
grant had remained inactive, and had not renewed his claim to the back land
until 1836, after the entry upon which the floating claims held by defendant in
that suit had been obtained.

In view of the facts of the case, and considering that the entries under which
the defendant held had been made before the claim under the Houma grant had
been renewed, the court deemed the construction put by Mr. Graham upon the
Acts of 1811 and 1814 consistent with the rules of law, and held that the en-
tries were not originally made in violation of law, and that the *ex parte* order of
a subsequent Commissioner of the General Land Office, was not a judgment
binding upon the defendant, and had been issued unadvisedly.   From the re-
mark of the court, that the administrative decisions of the Government and its
officers against a claim to land was nothing more than a refusal to recognize it,
and did not prevent the claimant from renewing his demand at any subsequent
time, it would seem to have been anticipated that cases might arise of entries
made after the claim to the back lands of the Houma grant had been renewed.

The claim was renewed in this case in 1836, after Mr. Graham went out of
office, and, upon the renewal, Commissioner Brown, who succeeded him, directed
the Register and Receiver at New Orleans to withhold from sale all the lands
within the claimed limits of the grant.   After this new claim and the change of
instructions consequent upon it, we are of opinion that the land covered by the

MILLAUDON
v.
LALANDE ET AL.

grant came again within the operation of the proviso of the Act of 1811; and, as the claim was afterwards prosecuted until 1844, when patents issued for it, the entries made in 1839, in which the floating claims of the plaintiff originated, were in violation of law, null and void. And, as floating claims are liable to the same disabilities as the original pre-emptions from which they are derived, the nullity extends to them, and the plaintiff is without title.

He evidently was of the same opinion when he sent testimony to the General Land Office to prove the illegality of the entries, and claimed back the price he had paid. The Secretary of the Treasury, finding this evidence satisfactory, acted upon it, acceded to the plaintiff's demand and referred the papers to the First Auditor of the Treasury for settlement. What further steps have since been taken, the record does not show.

But it is urged that it was held in the case of *Foly* v. *Harrison*, that the canceling the entries made on the Houma grant was not binding upon anybody, and that the Commissioner had no authority to make such a decree:

This proposition is, we think, laid down too broadly. The United States do not part with their title until the patent issues; and until then, or until private rights become vested, it is not precluded from canceling an entry improperly made. It is to be observed, however that the cases differ widely. In that, the claims had been canceled *ex parte*; in this the title was annulled, not only contradictorily with the plaintiff, but at his request, and upon satisfactory evidence adduced by him, that the original entry was unlawful. A decision made under such circumstances, if not a judgment, may at least be regarded in the light or nature of an agreement, which fixes, the rights of the parties to the land, unless it was entered into in error on the part of the plaintiff, which we have already shown was not the case.

In the case of *Bossier* v. *Metoyer*, 5 Martin R., 680, the title under which the plaintiff pretended to claim, had been taken by him from a bundle of papers in the office of the Commandante, labeled "Requêtes des concessions de terres reunies au domaine." It was objected that the fact of the surrender of the requête was not sufficient to destroy the written title of the plaintiff, and that nothing short of a written declaration from him, that it was his intention to abandon the land, could do away his grant. But the court held that the surrender of the only existing evidence of an inchoate and conditional title into the hands of the officer from whom it had been obtained, implied an abandonment of the inchoate right. In this case, there was a written declaration of the plaintiff that he intended to abandon his inchoate right, and the evidence which entitled him to do so, was furnished by himself.

We have dealt with the facts of this case as the counsel have done in their briefs, considering the acts of the Land Department with reference to the Houma claim, as part of the history of the country; but our decision must have been the same if we had confined ourselves to the evidence in the record. It shows that the entries upon which the floating claims issued, were within the claimed limits of the Houma grant, and that they were canceled on the application of the plaintiff; and it does not contain the decision and acts of Mr. Graham upon which the court based its interpretation of the Acts of 1811 and 1814 in the suit of *Foly* v. *Harrison*.

Without inquiring into the title of the defendants, we are of opinion that the plaintiff has failed to make out his case, and that the judgment must be affirmed.